UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HUGHES,   Civil Action No.: 18-11168
                                           Honorable Nancy G. Edmunds
          Plaintiff,    Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 16]**

    Plaintiff Christopher Hughes appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his applications for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and (C). The Court finds that the administrative law judge erred in assessing the opinion evidence of Hughes's treating physician and thus **RECOMMENDS** that:

- Hughes's motion [ECF No. 11] be **GRANTED IN PART AND DENIED IN PART**;

- the Commissioner's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **REMANDED,** under sentence four of 42 U.S.C. § 405(g), for further consideration consistent with this Report and Recommendation.

I. **BACKGROUND**

A. **Background and Disability Applications**

Hughes was born on July 16, 1969, making him 44 years old on his alleged onset date of December 1, 2013. [ECF No. 9-5, Tr. 156, 162]. He has completed schooling through the 12th grade and has prior work history as a maintenance mechanic. [ECF No. 9-2, Tr. 23-24]. Hughes alleged disability due to Dupuytren's contracture,[1] and back and knee pain. [ECF No. 9-6, Tr. 180].

After the Commissioner denied his applications initially, Hughes requested a hearing, which took place in January 2017; he and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 30-53]. In a March 15, 2017 written decision, the ALJ found Hughes to be not disabled. [*Id.*, Tr.

---

[1] "Dupuytren's [] contracture is a hand deformity that usually develops over years. The condition affects a layer of tissue that lies under the skin of your palm. Knots of tissue form under the skin—eventually creating a thick cord that can pull one or more fingers into a bent position." Mayo Clinic Staff, Dupuytren's contracture, https://www.mayoclinic.org/diseases-conditions/dupuytrens- contracture/symptoms-causes/syc-20371943 (last visited March 20, 2019).

2

12-29]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Hughes timely filed for judicial review. [*Id.*, Tr. 1-6; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Hughes was not disabled. At the first step, he found that Hughes had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 9-2, Tr. 17]. At the second step, the ALJ found that Hughes had the severe impairments of "degenerative disc disease of the lumbar spine, polyarthralgia, and disorders of the muscle, ligaments, and fascia of the hands and feet." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 18].

Between the third and fourth steps, the ALJ found that Hughes had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except:

4

> [H]e can lift up to 20 pounds occasional and lift/carry up to 10 pounds frequently. He has a limitation with foot control operation bilateral to occasionally. He can never climb ladders, ropes of scaffolds. He must avoid concentrated exposure to excessive vibration and avoid even moderate use of machinery. He cannot work on uneven terrain. He must have a sit/stand option alternatively at will, provided he is not off task more than 10% of the work period, and all transitions are within the 10% of task limitations.

[*Id*.]. At the fourth step, the ALJ concluded that Hughes could not perform his past relevant work. [*Id.,* Tr. 23]. At the final step, after considering Hughes's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that there were jobs in significant numbers in the national economy that Hughes could perform, including cashier, office helper/worker and price marker. [*Id.*, Tr. 24].

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Hughes argues that the ALJ erred in failing to find that he meets or equals Listings 1.02B or 1.04A. [ECF No. 11, PageID.518]. He next argues that the ALJ erred in discounting the opinion of his treating physician, Navira Rizwan, M.D. [*Id.*, PageID.521]. Hughes also says that the ALJ erred by posing a hypothetical question to the vocational expert that did not include all of his functional limitations. [*Id.*, PageID.524]. The Court finds that substantial evidence supports the ALJ's determination that Hughes did not meet or equal Listing 1.02B or 1.04A, but that the ALJ failed to properly weigh the opinion of his treating physician, thus requiring a remand.

**B.**

The ALJ concluded at step three that "[i]ndividually or in combination, the medical evidence does not document impairments of listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or

6

in combination." [ECF No. 9-2, Tr. 18]. The ALJ also "evaluated the signs, symptoms, and laboratory findings of the claimant's severe impairments, finding that they do not meet or medically equal in severity or duration the criteria in Listing 1.00, 14.00, or any other listing." [*Id.*].

**1.**

Hughes first contends that the ALJ erred by failing to conclude that his impairments met or equaled the criteria of Listing 1.02(B). [ECF No. 11, PageID.512]. Listing 1.02(B) is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> . . .
>
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02B. The "inability to perform fine and gross movements effectively" is defined by the Listings as "an extreme loss of function of both upper extremities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00B2c. To use one's upper extremities effectively, the Listings indicate that an individual must be capable of "reaching, pushing, pulling,

7

grasping, and fingering to be able to carry out activities of daily living." *Id.* The inability to effectively perform fine and gross movements may include: "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.* The listing requires evidence of one major peripheral joint in each upper extremity resulting in an inability to carry out the activities of daily living. *Id.;* § 1.00B2c. Hughes bears the burden of proving that he satisfies all the criteria of the listing. *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 708 (E.D. Mich. 2011).

To support his argument that he meets or equals Listing 1.02B, Hughes notes a December 2015 surgery on his left small and ring fingers to correct his Dupuytren's contracture.[4] [ECF No. 9-13, PageID.489]. Hughes also testified that the surgery was unsuccessful, and that he continued to experience pain and the inability to perform gross and fine motor skills. [ECF No. 11, PageID.521; ECF No. 9-2, PageID.45].

The Commissioner responds that the ALJ comprehensively considered whether Hughes met or equaled Listing 1.02B. [ECF No. 16,

---

[4] Hughes's motion states that he was also treated at the University of Michigan Hospital in November 2015, but the medical evidence notes only a December 2015 surgery.

8

PageID.547]. Though the ALJ did not analyze Listing 1.02B at step three, the ALJ need not include the same analysis in different parts of the decision or "arrange the decision in a particular manner" to satisfy the regulations. *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *28 (E.D. Mich. Jan. 13, 2015).[5] The ALJ's analysis of the record shows that Hughes has the ability to carry out the activities of daily living.

The ALJ considered the April 2015 consultative physical examination findings of Mohammed Khaleel, D.O. [ECF No. 9-2, Tr. 23; ECF No. 9-9, Tr. 263-68]. Dr. Khaleel noted that Hughes's bilateral pinky digits were contracted 90 degrees, though his reflexes and grip strength was full, sensation was intact and no muscular atrophy was noted. [*Id.*]. Dr. Kahleel concluded that, despite Hughes's Dupuytren's contractures, he retained the ability to zip and button his clothing, tie his shoelaces and he otherwise had full range of motion. [*Id.* at Tr. 266].

---

[5] The fact that the court concludes below that the ALJ erred in discounting the opinion of Dr. Rizwan does not affect the ALJ's conclusion that Hughes failed to meet or equal Listing 1.02B, as the Sixth Circuit has held that only a physician's clinical findings, and not general opinions on disability, are relevant at step three. *See, e.g., Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 244-45 (6th Cir. 1986).

9

The ALJ also considered an October 2015 rheumatology evaluation which noted right hand flexion contracture and mild osteoarthritis of the left hand, together with flexion contracture and mild narrowing of the joints. [ECF No. 9-2, Tr. 20; ECF No. 9-12, Tr. 408-11]. Hughes's shoulders, elbows and wrists appeared non-tender with a normal range of motion. [*Id.*]. Muscle strength remained 5-out-of-5 in all extremities and reflexes were also normal. [*Id.*]. The ALJ noted that Hughes underwent surgery to correct Dupuytren's contracture in his left small and ring fingers with no reported surgical complications. [ECF No. 9-2, Tr. 21; ECF No. 9-13, Tr. 450-56]. And in his function report, Hughes wrote that he could drive, shower, change his clothing, cook dinner and shop for groceries. [ECF No. 9-6, Tr. 187-94].

Hughes has not met his burden in proving that he satisfies the criteria for Listing 1.02B. *See Miller*, 848 F. Supp. 2d at 708. While there is some evidence that Hughes cannot perform fine and gross motor movements, substantial evidence supports the ALJ's conclusion that Hughes's Dupuytren's contractures did not result in an inability to perform his activities of daily living. And "[i]f the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

### 2.

Hughes also argues that the ALJ erred by not finding that his back impairment met or equaled Listing 1.04A, which involves:

> 1.04A Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, fact arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> > A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Hughes says that medical evidence, which includes two MRIs, reports of radiating pain and ineffective ambulation, and ineffective physical therapy, support a finding that he met or equaled Listing 1.04A. [ECF No. 11, PageID.519-21].  The Commissioner responds that Hughes's evidence fails to provide the "detailed description" necessary to conclude that Hughes meets or equals Listing 1.04A.  [ECF No. 16; PageID.549].

11

According to the Commissioner, the evidence lacks the specific findings about spinal examinations, motor loss and evidence of atrophy required by the regulations. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 1.00D, 1.00E.

The ALJ gave great weight to the opinion of Dr. Digby who expressly considered whether Hughes met or equaled Listing 1.04. [ECF No. 9-2, Tr. 23, ECF No. 9-3, Tr. 69-75]. Dr. Digby opined that Hughes could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday. [ECF No. 9-3, Tr. 70]. He limited Hughes to occasional bilateral foot tasks, and opined that Hughes's postural limitations made it so that he could only occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds. [*Id.*, Tr. 70-71]. Hughes needed to avoid concentrated exposure to vibration and even moderate exposure to hazards. [*Id.*, Tr. 71]. Despite these limitations, Dr. Digby concluded that Hughes was not disabled. [ECF No. 9-3, PageID.75].

A December 2013 MRI showed degenerative disc disease at L5-S1 and L4-L5, and there was small focal central protrusion of disc indenting the anterior margin of the thecal sac, but no herniated disc or evidence of spinal stenosis or encroachment upon neuroforamina. [ECF No. 9-8, Tr. 229-30]. Records from the Center for Family Health Medical reveal

evidence of lumbar spine tenderness, mild pain with motion, and left leg paresthesia, but the straight-leg raising test was "equivocal." [ECF No. 9-2, Tr. 19, ECF No. 9-13, Tr. 438-40].

In January 2014, Hughes presented at Allegiance Pain Management with complaints of lumbar pain, and was diagnosed with degenerative disc disease, osteoarthritis of the lumbar spine and polyarthralgia. [ECF No. 9-2, Tr. 19, ECF No. 9-8, Tr. 236-29]. Upon examination, Hughes's gait was not antalgic or broad-based, he could heel-toe walk normally, and he had normal lower extremity and paraspinous muscle tone. [*Id.*, Tr. 238]. He had a limited range of motion of the lumbar spine, but normal lower extremity strength, and he had no leg or back pain during the straight-leg raising testing. [*Id.*, Tr. 239].

The ALJ also relied on Dr. Khaleel's physical examination of Hughes's back, during which he noted that Hughes used no assistive device for ambulation, and his gait and station appeared normal. [ECF No. 9-2, Tr. 20; ECF No. 9-9, Tr. 263-68]. Dr. Khaleel noted no muscular atrophy and that Hughes could bend forward, squat and heel and toe walk without difficulty. [*Id.*, Tr. 264]. Straight-leg raise testing and his ranges of motion in the spine were normal. [*Id.*, Tr. 254-65].

In September 2016, Hughes presented at the Center for Family Health with muscle spasms and a mildly reduced range of motion of the lumbar spine, though his gait and straight leg raise testing on the right and left sides were both normal. [ECF No. 9-2, Tr. 21, ECF No. 9-11, Tr. 366-69]. He could heel and toe walk without issue and his muscle tone and strength also remained normal. [*Id.*, Tr. 369]. Hughes was assessed with degenerative disc disease of the lumbar spine. During a November 2016 follow-up, Hughes complained of back pain, but an MRI showed "no significant change since the [December 2013 MRI]." [ECF No. 9-10, Tr. 288-89].

The Court agrees with the Commissioner that, while some criteria of Listing 1.04A are met, Hughes has failed to carry his burden of showing that all required criteria are present. In particular, as described above, the record does not show evidence of positive straight-leg raising tests in the sitting and supine positions. "Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting Listing 1.04A." *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016). Hughes has thus failed to carry his burden that his impairments meet or equal Listing 1.04A.

## C.

Hughes also contends that the ALJ erred in discounting the weight given to his treating physician in violation of 20 C.F.R. § 404.1527.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference. *Id.*

An ALJ who gives less than controlling weight to a treating physician's opinion must give "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The ALJ's reasoning must "be sufficiently specific to make clear to any

subsequent reviewers the reasons for the weight the adjudicator gave to the treating source's medical opinion." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). And remand is warranted when the ALJ's reasoning is not sufficiently specific even if ALJ's conclusion may be justified by the record. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860-861 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243).

The ALJ gave "some weight" Dr. Rizwan's medical source statement "to the extent the claimant had severe physical impairments resulting in pushing, lifting, and grasping limitations" consistent with the RFC. [ECF No. 9-2, Tr. 23]. The ALJ discounted the weight given to Dr. Rizwan's opinion that Hughes was not capable of lifting, pulling or pushing more than 30-40 pounds. [*Id.*; ECF No. 9-9, Tr. 269]. The ALJ also gave little weight to Dr. Rizwan's opinion that Hughes was unable to sit, stand or walk more than two to four hours in an eight-hour workday, citing the longitudinal

16

medical record, "especially those records from Exhibit 7F." [ECF No. 9-2, Tr. 23].

The ALJ's cursory reference to the entire medical record, with emphasis on the documents within the 92-page Exhibit 7F, is not a meaningful explanation to discount the weight given to Dr. Rizwan's opinion. [ECF No. 9-2, Tr. 23; ECF Nos. 9-11 to 9-12]. The decision does not analyze Dr. Rizwan's opinion under the controlling weight test, and thus does not articulate the necessary good reasons. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013); § 404.1527(c)(2). Thus, the Court should not hesitate to remand this matter for reconsideration of the weight given to Dr. Rizwan's opinions about Hughes's limitation, and to specify that the ALJ must apply the § 404.1527(c)(2) factors. *Wilson,* 378 F.3d at 545.

This finding renders moot Hughes's remaining argument about hypothetical question posed to the VE.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Hughes's motion for summary judgment be [ECF No. 15] be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks reversal and direct award of benefits; the Commissioner's motion

[ECF No. 18] be **DENIED** and this case be **REMANDED**, under sentence four of 42 U.S.C. § 405(g), for further consideration consistent with this Report and Recommendation.

<table>
<tr><td></td><td>s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD</td></tr>
<tr><td>Dated: March 20, 2019</td><td>United States Magistrate Judge</td></tr>
</table>

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
